# Central of Georgia Ry. Co. *v.* Barnitz.

### Injury to Passenger.

(Decided February 10, 1916.   Rehearing denied March 4, 1916.
70 South. 945.)

1. **Carriers; Passengers; Damages.**—Where the passenger was carried by her destination on account of the negligence of the conductor and was left to her own resources, purchased a ticket back and reached the depot of her destination after dark, and much later than she would have done, she could recover from the railroad for the physical and mental damages suffered by her while being carried from the depot at destination to her mother's home.

2. **Appeal and Error; Assignment; Waiver.**—Where matters are assigned as error, but are not argued or insisted upon in brief or oral argument further than practically to restate the assignments of error, they will be treated as waived.

APPEAL from Jefferson Circuit Court.

Heard before Hon. C. B. SMITH.

Action by Mrs. Charles Barnitz against the Central of Georgia Railway Company, for damages for injury for being carried beyond her destination. Judgment for plaintiff and defendant appeals. Affirmed.

(This cause was reviewed by the Supreme Court on certiorari to the Court of Appeals, the writ was granted, and the cause was reversed and remanded. See 73 South. 471.—Reporter.)

LONDON & FITTS, and W. S. BROWER, for appellant. FRANK S. WHITE & SONS, for appellee.

PELHAM, P. J.—In the original opinion in this case, we reversed the judgment of the lower court on the authority of the case of *L. & N. R. R. Co. v. Quick*, 125 Ala. 553, 28 South. 14. This court is required by statute to conform its holdings to the rulings of the Supreme Court, and on the original consideration we were impressed with the view that no distinguishable difference existed in the two cases that would authorize us to reach a different conclusion and apply a different rule as to the proper element of recoverable damages than that declared in the *Quick Case*, limiting the recovery to the harm and injury occasioned to

the plaintiff in returning to her point of destination, and specifically excluding a right of recovery based on the events and happenings that transpired subsequently, and holding, as applied to the facts in that case, that such happenings were foreign to the issue and an independent cause of injury not connected with or following, in the ordinary course of events, from the wrong complained of, and could not be made the basis of a claim for damages. The court, upon re-examination, has reached the conclusion that the facts in the *Quick Case, supra,* are distinguishable from the facts in the case before it, and has withdrawn the former opinion, reversing the judgment of the lower court, on the authority of that case.

We are unable to agree with the appellee's contention, so urgently insisted upon, that there was not a sufficient insistence in the appellant's original brief on the proposition upon which the case was reversed and to require review of that question. As has been appositely stated in brief of counsel in another case (*Western Union Tel. Co. v. Emerson, Infra,* 69 South. 335) on this proposition: "It has been the universal practice in this state to discuss assignments of error and rulings of the trial court which are governed by the same general legal principle without repetition or separation. The practice is orderly and presents to the appellate court the ruling based upon the given principle in such manner as may be intelligently considered."

The question of the plaintiff being entitled to recover, as a proper element of damages, for the worry and anxiety she experienced after she had been carried to her destination (Childersburg) by the defendant company, and in going from Childersburg to her mother's home is, we think, fairly and clearly raised by the rulings on the evidence, as well as charges made the basis of assignments of error, and requires our consideration and review of that question. The action was brought by plaintiff to recover damages, as a passenger on one of the defendant's trains, for failure to notify the plaintiff of the arrival of the train at Childersburg, her destination, and in negligently failing to afford the plaintiff an opportunity to alight from the train at that point, and in carrying her to a station beyond, called Sylacauga. The complaint, in the three counts which were submitted to the jury, claimed damages for sickness, physical inconvenience, and mental anxiety or worry. The defendant filed pleas of the general issue to each count, and the case was tried on the issues thus tendered.

The evidence, without conflict, showed that the plaintiff (who was a married woman) boarded the defendant's train at Birmingham on a ticket entitling her to ride to Childersburg; that her ticket was taken up by the conductor, and that she was carried past Childersburg to Sylacauga, where she was put off at about dusk, and had to wait in the station there for some time for a train upon which to return to Childersburg; that, if any arrangements were made by the defendant for carrying the plaintiff back to Childersburg, she knew nothing of it; that she purchased another ticket at Sylacauga to carry her to Childersburg, and returned to the latter place considerably after dark, riding upon the defendant's train on the ticket purchased by her at Sylacauga entitling her to such carriage as a passenger. The evidence was in conflict as to the defendant having been negligent in failing to call the station of the plaintiff's original destination (Childersburg), and affording her an opportunity of disembarking there on her original passage. The plaintiff testified to facts tending to show, or from which there was sufficient inference to submit the question to the jury, that, in addition to having been exposed to the cold while waiting in the station at Sylacauga, and having suffered other physical discomforts and inconveniences, resulting in her sickness, she also suffered mental worry and anxiety as a proximate consequence of the defendant's breach of duty. There was evidence that the plaintiff did not arrive at Childersburg, upon her return there from Sylacauga, until some time after dark, when she would have arrived before dark on the train upon which she took passage at Birmingham. There was also evidence in behalf of the plaintiff affording an inference that in addition to the physical discomfort from the cold, etc., experienced by the plaintiff in going from the station at Childersburg to her mother's home in the country in the dark, she also suffered mental anxiety and worry. The three counts of the complaint on which the case was tried claimed damages for all of these different elements of damage as having been proximately caused by the negligent conduct of the defendant's agents or servants.

(1) In the *Quick Case* the elements of recoverable damage, as applied to the facts in that case, were limited to the harm and injury occasioned to the plaintiff in returning to her point of destination; it being held in that case that what happened to the plaintiff (after the defendant returned her to her original desti-

nation) in going from the station to her son's home, and how that trip affected her, was foreign to the issue. The holding, as applied to the facts in that case, excluded as an element of recoverable damage mental worry and anxiety suffered by the plaintiff after she reached her destination on defendant's railroad, and while being carried in a private conveyance to her son's house. The distinction between the *Quick Case* and the case in hand lies in the fact that in the *Quick Case* the contract of carriage was completed by carrying the passenger to the station of her destination; that is, after carrying her past the station, the defendant, in completing its contract of carriage, returned the passenger to her destination. Not so in the instant case, where it appears that the passenger was carried past her destination and left to her own resources to reach her destination, which she accomplished by entering into a different obligation, or contract, by purchasing, at her own expense, another ticket entitling her to ride as a passenger from Sylacauga to Childersburg. In this case the original contract of carriage has never been completed by the carrier returning the passenger to the point of her destination. Consequently the mental worry and anxiety suffered in going from the station at Childersburg to her mother's home, under the facts in this case, was not based on happenings transpiring subsequent to the completion of the defendant's contract of carriage. The discomfort and inconvenience experienced, and mental worry and anxiety proximately resulting therefrom, suffered by the plaintiff in going from the station to her mother's home, are, then, proper elements of recoverable damage as the direct, natural, and proximate result of the breach of the contract of carriage, or recoverable as an aggravation of such damage.—*Central of Ga. Ry. Co. v. Morgan,* 161 Ala. 486, 49 South. 865; *L. & N. R. R. Co. v. Seale,* 172 Ala. 484, 55 South. 237; *E. T., V. & G. Ry. Co. v. Lockhart,* 79 Ala. 315; *L. & N. R. R. Co. v. Dancy,* 97 Ala. 340, 11 South. 796. It follows that we are of the opinion that the trial court was not in error in admitting in evidence as a basis of recoverable damage what happened to the plaintiff after arriving at Childersburg, and while going to her mother's home, or in refusing charges requested by the defendant limiting the damages to injuries suffered before leaving the station at Childersburg.

(2) Many of the matters assigned as error are not argued or insisted upon in appellant's brief, further than to practically

[Central of Georgia Ry. Co. v. Barnitz.]

restate the assignment of error made on the record, and are waived.—*Comstock v. Jahant Heating Co.*, 10 Ala. App. 663, 64 South. 178, and authorities there cited. The assignments of error sufficiently insisted upon to require review, aside from the proposition we have discussed, do not show error available to appellant requiring a reversal, and do not, we think, require discussion.

Affirmed.

## ON REHEARING.

BROWN, J.—On re-examination of the case, the opinion prevails that a rehearing should be granted, the judgment of reversal set aside, and the judgment affirmed, and the writer concurs in this conclusion for the reasons following:

This is an action by a passenger against the carrier for a breach of the duty resting on the carrier to exercise reasonable diligence to give the passenger notice that the train on which she was being carried had reached her destination and reasonable opportunity to alight therefrom.—*Ala. City, Gadsden & Attalla Ry. Co. v. Cox*, 173 Ala. 629, 55 South. 909; *Southern Ry. Co. v. Herron*, 12 Ala. App. 415, 68 South. 551. The case was submitted to the jury on the first, second, and third counts of the complaint and the general issue pleaded by the defendant. The first count, after showing the relation of passenger and carrier between the plaintiff and defendant, and defendant's duty to carry the plaintiff from Birmingham to Childersburg and there afford her a reasonable opportunity to disembark, avers: "That the defendant neglected its duty in that behalf and negligently failed to notify her of the arrival of said train at Childersburg, and negligently failed to afford her a reasonable opportunity to alight from said train at said place, but carried her beyond said station to a place called Sylacauga, another station on defendant's line of railway, where she was put off the train by the defendant's servant or agent, acting within the line and scope of his employment, and ordered and directed by its servant to wait at Sylacauga to catch another one of defendant's trains bound in a westerly direction and thereby return to Childersburg. Plaintiff avers that all of her wrongs and grievances herein complained of occurred at night, after dusk; that she was compelled to wait in a cold waiting room for several hours; that she was unaccompanied; that the defendant's servant's or agent's manner toward

her was rude and offensive; that she was greatly alarmed and frightened, and rendered exceedingly uncomfortable by the condition of the waiting room; that when she was returning to Childersburg at a late hour, she was not met by any one, as she had arranged for; she was compelled to go a long distance in the country unaccompanied by any one she knew;   *   *   *   that at the time she was suffering from cold, and this cold was greatly aggravated by exposure; she was humiliated, mortified, and chagrined by rude and offensive conduct of defendant's servant or agent, acting within the line and scope of his employment; she was greatly frightened, made nervous, and suffered great mental anxiety and worry, and continued to suffer much anxiety and worry, until she reached her destination; that on account of the exposure to the cold, she was made sick, sore, and lame, contracted severe cold and other ailments, from which she has continued to suffer up to this time; that she was caused to expend a great deal of money in effecting a cure of her said injuries, and has been permanently injured by reason of the negligent conduct of the defendant."

The second count adopts all of the first, and adds: "And plaintiff avers that her injuries were proximately caused by the negligent conduct of the defendant's servant or agent, acting within the scope of his employment," etc.

The third count is substantially the same as the second.

The evidence is without conflict that the plaintiff, on the 22d day of November, 1914, the occasion set forth in the complaint, procured a ticket entitling her to be carried from Birmingham to Childersburg on one of defendant's trains; that she entered upon her journey on the proper train, and her ticket was presented to and accepted by the conductor in charge of the train; that she was carried by her destination and put off the train at Sylacauga, after dark, and was compelled to remain in the waiting room at Sylacauga until a train bound for Childersburg arrived. No provision, so far as plaintiff was informed, was made by the defendant's servant to carry her back to Childersburg; but she was compelled to purchase another ticket, which she did at Sylacauga, embarking on the next train, which reached Childersburg shortly before 11 o'clock at night, where there was no one to meet her. Through the kindness of Dr. W. H. Hutchinson, to whom plaintiff was introduced at Sylacauga while she was there waiting for the train, and without the procurement of

[Central of Georgia Ry. Co. v. Barnitz.]

the defendant or its servants, she was carried to her mother's home, arriving there at about 11 o'clock, or later. If plaintiff had gotten off of the first train at Childersburg, she would have reached her mother's home early in the evening—about dark. As to whether the station was called when the train out of Birmingham reached Childersburg, the evidence was conflicting— that on the part of the plaintiff tending to show that the station was not called; that plaintiff did not know that the train had reached Childersburg until it had passed the station, and only then when plaintiff inquired of the trainmen; and that the conductor was rude and discourteous in his manner toward her, and just before the train reached Sylacauga rudely approachd her and told her to get her hat and get off of the train at Sylacauga, or he would have to collect extra fare; that the waiting room where she had to remain while waiting for the next train to Childersburg was illy lighted, and was cold and disagreeable; that it was full of strangers, both men and women; that she was ill when she left Birmingham, and the evidence tended to show that she contracted a severe cold by reason of her exposure at the station at Sylacauga; that she was annoyed, disturbed, and excited by being carried by her destination and the treatment she received from the trainmen; that plaintiff got very cold in going from Childersburg late at night to her mother's home; that she was made ill, and was threatened with an attack of pneumonia, and after she returned to her home in Birmingham her illness continued, requiring the attendance of physicians. The evidence further shows that her trip from Birmingham to Childersburg was occasioned by being advised that her mother was seriously ill, and she was going to attend her. The defendant offered contradicting testimony tending to rebut the plaintiff's theory, but the evidence was sufficient to carry the case to the jury and afforded legitimate inference that the plaintiff not only suffered physical injury from exposure, resulting in her sickness and physical suffering, but that it justified an inference that she suffered mental pain and anguish as a proximate result of the breach of duty complained of; and the jury was authorized to find that her injury and suffering was aggravated by the exposure of the trip from Childersburg to her mother's home, and that her physical ailments and suffering extended far beyond the time she finally reached her destination at Childersburg. If the evidence justifies these conclusions and inferences, then the trial court ruled correctly in the matters complained of here as error.

[Central of Georgia Ry. Co. v. Barnitz.]

It has been so often stated that it might be termed a truism that the law exacts of carriers of passengers the duty to exercise the highest degree of care, skill, and diligence known to very careful, skilled, and diligent persons engaged in like business; that they are not only obliged to carry passengers safely, but also to insure by every reasonable means their comfort and safety through the journey.—*Birmingham Ry., L. & P. Co. v. Barrett,* 179 Ala. 275, 60 South. 262; *Southern Ry. Co. v. Lee,* 167 Ala. 268, 52 South. 648; *Southern Ry. Co. v. Harrington,* 166 Ala. 630, 52 South. 57, 139 Am. St. Rep. 59. As remarked by Mr. Justice SOMERVILLE, in substance, to prescribe this duty and yet hold the carrier immune to liability for the only consequence that can ordinarily result would be simply a contradiction of terms.— *Birmingham Ry., L. & P. Co. v. Glenn,* 179 Ala. 268, 60 South. 111. In discussing the measure of damages in *Central of Georgia R. R. Co. v. Morgan,* 161 Ala. 486, 49 South. 866, the Supreme Court said: "It is true that the measure of damages in cases like this, in the absence of some element of gross disregard of the passenger's rights, or of facts showing insult or abuse, is compensation merely for the actual loss or injury sustained by the passenger. The carrier in such cases  *  *  *  is also responsible for the discomfort, inconvenience, expenses, and charges shown to have been the direct, natural, and proximate result of the breach of the contract"—citing *Seller's Case,* 93 Ala. 9, 9 South. 375, 30 Am. St. Rep. 17; *Quick's Case,* 125 Ala. 564, 28 South. 14; *Dancy's Case,* 97 Ala. 338, 11 South. 796.

In discussing the propriety of the refusal of a new trial for excessive damages in the case above quoted from, the court, after showing that the plaintiff was a passenger and was carried by his destination, referred to the fact, among others:

"That he lost several hours, and at this station stood out of doors for several hours upon a cold night; that in consequence of being carried past his destination *he had to walk to his mother's house, instead of riding, as he could have done,* had he been allowed to get off at his destination; that while so exposed in the night time he was without an overcoat or wrap, and that he had a cold in the head therefrom."—*Central of Georgia R. R. Co. v. Morgan, supra.*

In *L. & N. R. R. Co. v. Seale,* 172 Ala. 484, 55 South. 238, a like case: "We have shown above that the evidence is not without conflict on one point, and we may say generally that the

questions as to the condition of the ground between the place where the plaintiff got off the train and her home were properly admitted as tending to show the probable result of having to get off where she did and walk to her home."

In *L. & N. R. R. Co. v. Quick*, 125 Ala. 563, 28 South. 17, in passing on a motion to strike certain matters from the complaint as claiming improper elements of damages: "The part moved to be stricken contained the clause: 'After she found that she had left Birmingham, she was very much frightened, and was very anxious, and suffered a great deal of mental worry and anxiety, and continued to suffer worry and anxiety until she reached the house of her * * * son.' This averment is made independent of its connections, and sets up a proper element of damage, as the *direct* result of being carried beyond her destination."

In *L. & N. R. R. Co. v. Dancy*: "If plaintiff was made sick by a walk and exposure by *defendant's wrong*, and her ride home aggravated such sickness beyond what would have ensued had she not taken it, the question whether the aggravated sickness beyond what would have ensued had she not taken it, the question whether the aggravated sickness should be considered an element of damage, or not, will depend upon whether the jury shall be of opinion that the ride home was such, under all the circumstances then surrounding the plaintiff, as a reasonably prudent person, similarly stituated, would have taken. If yea, she would be entitled to damage for such aggravated sickness; otherwise not."

The *Quick Case* is distinguished from the case presented on this record in this: The plaintiff was carried by her destination and put off the train at Sylacauga, and there left to her own resources to reach her destination, where, according to her testimony, she encountered annoyances and discomforts calculated to endanger her health. She had to purchase another ticket and be carried under a different contract to Childersburg; and evidence showing that the conductor on the train out of Birmingham, unbeknown to the plaintiff, wrote a note to the conductor on the other train to carry plaintiff back to Childersburg, if admitted, would not have changed the result, unless the plaintiff had been acquainted with these facts and consented to accept this arrangement, and even then the result of the uncivil conduct of the conductor while on the train, and her exposure while at Sylacauga.

and its effects, together with any fact showing an aggravation, would have been left for the consideration of the jury. In *Quick's Case,* the passenger, after being carried by her destination, was returned by the carrier to her destination, thus completing the contract of carriage. After the contract was completed, an intervening efficient agency, to-wit, the stranger, procured the bus and her carriage out into the city through a drenching rain, resulting in her sickness. The holding in that case clearly is that under the undisputed evidence these injuries were not proximately caused by the defendant's breach of duty, but by the intervening efficient cause; and therefore the facts brought out in that case occurring subsequent to the time the passenger was put down at her destination by the carrier were foreign to the case. That this is a correct interpretation of the court's holding in the *Quick Case* is clearly demonstrated by its subsequent application.

To illustrate: In *Reiter-Conolly Mfg. Co. v. Hamlin, as Admr.,* 144 Ala. 214, 40 South. 288: "If an injury has resulted in consequence of a certain wrongful act or omission, but only through or by means of some intervening cause, from which last cause the injury followed as a direct and immediate consequence, the law will refer the damage to the last proximate cause, and refuse to trace it to that which was more remote"—citing the *Quick Case.*

The same application was made in the following cases: *Mobile & Ohio R. R. Co. v. Christian Moerlein Brewing Co.,* 146 Ala. 408, 41 South. 17; *A. G. S. R. R. Co. v. Vail,* 142 Ala. 141, 38 South. 124, 110 Am. St. Rep. 23; *Creola Lumber Co. v. Mills,* 149 Ala. 485, 42 South. 1019; *A. G. S. R. R. Co. v. Vail,* 155 Ala. 387, 46 South. 587.

Here the contract of the carrier to carry plaintiff from Birmingham to Childersburg, and there call the station and give her reasonable time and opportunity to disembark from the train, if her evidence is believed, has never been complied with by the carrier. She was carried far beyond her destination, and left to her own resources, and returned without the aid of the breached contract, on a different obligation, at her own expense. She suffered discomfort, indignity, and physical injury by being made sick, and, under the logical common-sense rule, the carrier, if its servant was guilty of negligence, should be held responsible for all the consequences which a prudent and experienced

man, fully acquainted with all the circumstances which in fact existed, whether they could have been ascertained by reasonable diligence or not, would, at the time of the negligent act, have thought reasonably probable to follow, if they had occurred to his mind.—*K. C., M. & B. R. R. Co. v. Foster*, 134 Ala. 254, 32 South. 773, 92 Am. St. Rep. 25; *M. & O. R. R. Co. v. Christian Moerlein Brewing Co., supra; L. & N. R. R. Co. v. Quick, supra; Western Ry. Co. v. Mutch, Admr.*, 97 Ala. 194, 11 South. 894, 21 L. R. A. 316, 38 Am. St. Rep. 179.

We therefore conclude that the court properly admitted the evidence tending to show that plaintiff suffered from cold while she was being carried to her mother's home from Childersburg, in connection with the other evidence in the case showing the plaintiff's exposure to cold and annoyance, to be considered by the jury in determining whether her injuries were aggravated by these circumstances, and that the charges limiting the recoverable damages to the time plaintiff reached Childersburg were properly refused.

The foregoing was prepared as a dissenting opinion on rehearing, and afterward the other members of the court reached the conclusion here stated. The writer hereof offers this apology for two opinions appearing in the case.